IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TERESA C. HUFF                                                                                                 PLAINTIFF

v.                               Civil No. 10-3121

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Teresa Huff, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on April 11, 2003, alleging an onset date of March 28, 2002, due to degenerative disk disease ("DDD"), shoulder pain, knee pain, asthma, anxiety disorder, depression, and post-traumatic stress disorder ("PTSD"). Tr. 52-54, 82, 121, 266-269. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 26-31, 35-38. An administrative hearing was held on December 5, 2005, and resulted in an unfavorable decision on April 28, 2006. Tr. 18-24, 302-337. After the Appeals Council rejected Plaintiff's request for review, Plaintiff appealed to this Court. Tr. 6-9, 391-394. On August 7, 2008, the matter was remanded back to the Administration for further consideration. Tr. 396-401. Specifically, the ALJ was advised to resolve the conflict between his RFC determination and the requirements of Plaintiff's past relevant work experience as a fast food worker and to have a psychiatric review technique form completed. On July 13, 2009, a

second administrative hearing was held. Tr. 606-635C. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 56 years old and possessed an eighth grade education. Tr. 586. She had past relevant work experience as a fast food worker and a cook. Tr. 81-90, 92-99, 108-113.

On May 20, 2009, the ALJ found plaintiff's DDD, leg pain, diabetes mellitus, an danxiety disorder were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 384-386. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform medium level work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote, few variables and little judgment is involved, and the supervision required is simple, direct, and concrete. Tr. 386-389. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a hand packager, dishwasher, and housekeeper. Tr. 389-390, 474-480.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 27, 2010. Tr. 338-340, 366-377. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 11.

II.  **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

**III.   Discussion:**

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

In the instant case, the ALJ concluded that Plaintiff could perform work where the interpersonal contact is incidental to the work performed. However, this is finding is not supported by substantial evidence. The record is replete with evidence of Plaintiff's anxiety, panic disorder, and PTSD. Dr. David Bailey completed a mental evaluation of Plaintiff in May 2003. Tr. 137-144, 167. Plaintiff reported a history of severe physical, emotional, and sexual abuse as a child.[1] In adulthood, Plaintiff

---

[1] Her statements concerning the beatings and sexual abuse were substantiated by the statement of her sister, Louise Adams. Tr. 602-603. Her father reportedly invited friends over to drink and then made Plaintiff and her brother physically fight as their entertainment. He would also have other men hold the children down while he beat them. And, beginning at age 11, he allowed men to sexually abuse Plaintiff. This continued until she married at age 15.

4

reported experiencing both panic attacks and recurrent memories of her childhood abuse, causing her to avoid other people. She divulged that she had no friends and generally avoided situations where she might have to talk to others. Dr. Bailey concluded that her symptoms were consistent with diagnoses major depression, generalized anxiety disorder with possible panic attacks, and PTSD. He was of the opinion that this would result in limitations in her ability to get along with the public, supervisors, and co-workers.

In June 2003, Dr. Stephen O'Hagan completed a psychiatric review technique form after reviewing Plaintiff's medical records. Tr. 145-162. He diagnosed her with depressive disorder not otherwise specified, anxiety disorder, and rule out panic attacks. Dr. O'Hagan concluded Plaintiff would have marked limitations in interacting with the general public and moderate limitations relating to supervisors and peers. Tr. 167.

In March 2009, Dr. Stephen Harris performed a psychological evaluation of Plaintiff and also concluded that Plaintiff would have moderate limitations interacting appropriately with the public, supervisors, and co-workers. Tr. 481-485. Further, in June 2009, Dr. Richard Chitsey, Plaintiff's treating doctor, opined that Plaintiff's constant pain and anxiety would prevent her from being around crowds and being able to hold down a job. Tr. 565-568. This same month, he also noted that Prozac had been ineffective at treating her anxiety and prescribed Xanax. Tr. 572. It also appears that she had been prescribed Buspar, Zoloft, Seroquel, and Risperdal, an antipsychotic, to treat her depression, anxiety, and panic symptoms. Tr. 263-265, 286, 287, 289, 344-345, 504, 505, 507.

Then, in April 2011, Dr. Vann Smith found Plaintiff to be seriously limited with regard to interacting appropriately with supervisors, co-workers, and the general public. Tr. 347-355. The record does reveal that Plaintiff has worked in approximately five different positions since her alleged onset date. However, as acknowledged by the ALJ, none of these jobs rose to the level of substantial gainful activity. And, the short duration of each job is further evidence that her mental and physical

problems substantially interfere with her ability to perform work-related activities, even more so that the RFC determined by the ALJ reflects. In 2009, Plaintiff told Dr. Chitsey that she had most recently worked at Wal-Mart, but quit because she could not stand crowds. Tr. 572. And, the record is replete with jobs Plaintiff has accepted but was unable to maintain for various reasons related to her mental and limitations. Tr. 612-618. She also had a history of eight unsuccessful marriages, evidencing difficulty with long-term social interaction. Tr. 137-144. Further, although she does attempt to shop for groceries and other items, Plaintiff has reported leaving her full shopping cart in the middle of the store on numerous occasions, due to experiencing a panic attack. Tr. 621-622.

The ALJ physical RFC determination is also suspect, as he concluded that she could perform a full range of medium level work without exertional limitations. However, Plaintiff also suffered from impairments resulting in pain in her shoulder, back, and neck. An MRI of her right shoulder showed a compete tear of the distal supraspinatus tendon in March 2002. Tr. 225. In September 2003, Dr. Richard Stewart noted decreased flexion and extension in her back and abduction and forward elevation of her shoulders. Tr. 168-171, 174-176. At this time, x-rays of her right shoulder also revealed degenerative changes at the ACV joint with small osteophytes and a probable bone island in the right humeral head. Tr. 172-173. In July 2004, Plaintiff injured her left upper extremity and lower back when lifting a watermelon at work. Tr. 253-255. Dr. John Range noted pain with range of motion beyond 60 degrees on all planes. In October 2004, Dr. Range noted increased lower back pain with a straight leg raise on the left and tenderness with palpitation throughout the shoulder and into the lateral upper arm. Tr. 246-251.

In October 2006, Plaintiff was diagnosed with plantar fasciitis and prescribed Naprosyn. Tr. 287, 505. X-rays of both heels confirmed the presence of osteophytes on both sides. Tr. 299. This diagnosis continued through at least January 2009. Tr. 287-289.

6

In March 2007, Dr. Chitsey completed a functional capacities evaluation concluding that Plaintiff could only occasionally reach above shoulder level, balance, push/pull, and lift/carry 11-24 pounds. Tr. 283-284, 511-512. Further, he also found Plaintiff could never bend/stoop, squat, crawl, climb, crouch, kneel, lift/carry over 24 pounds, use her left foot for repetitive movements in operating controls, or frequently flex or rotate her neck. Limitations with simple grasping, firm grasping, and fine manipulation bilaterally were also noted. In November 2008, Plaintiff was treated for left arm pain, most likely tendonitis. Tr. 546-547. In January 2009, she was treated for numbness and tinging in her feet and hands and diagnosed with questionable peripheral neuropathy. Tr. 548-549. In March 2009, treatment notes from Salem First Care Clinic revealed tenderness in Plaintiff's lower back. Tr. 555-556, 560-561. Records from Dr. Chitsey this same month revealed tenderness to palpation over the left knee cap and significant back pain. Tr. 571. In June 2009, Dr. Chitsey noted that Plaintiff's back pain continued. Tr. 572. In completing his assessment of Plaintiff on June 19, 2009, he noted that Plaintiff's knee often gave out, causing her to fall. Tr. 565-568. He then went on to provide an overly restrictive assessment of Plaintiff that we do not find support for in the record. However, we do note that he limited her to lifting 10 pounds or less; opined that she should never twist, stoop, crouch, or climb ladders or stairs; was limited with regard to using both hands for grasping, turning and twisting items, and fine manipulation; and, was limited in both arms with regard to reaching (including overhead).

After reviewing the entire record in this case, the undersigned is of the opinion that the matter must be reversed and remanded for further consideration of Plaintiff's RFC. It appears that both her physical and mental impairments result in more restrictive limitations than are reflected by the RFC determined by the ALJ. As this will ultimately impact the whether or not jobs exist in the national economy that Plaintiff could perform, this matter will be remanded for further consideration.

## V.  Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 13th day of August 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE